1

2

3

4

5

6

7

8

9        UNITED STATES BANKRUPTCY COURT

10            FOR THE DISTRICT OF OREGON

11  In Re:                      )    Bankruptcy Case
                                )    No. 07-60532-aer13
12  LEE MICHAEL ANDERSON and    )
    AMANDA BETH ANDERSON,       )         AMENDED
13                              )    MEMORANDUM OPINION
    _____Debtors.___)

14

15        This matter comes before the court on objections to confirmation

16  of Debtors' Chapter 13 plan filed by secured creditors Citifinancial

17  Mortgage Company, Inc. (Citifinancial) and Umpqua Bank (Umpqua)

18  (collectively "the home lenders"). The objections are to plan paragraphs

19  relating to treatment of the home lenders' claims. The matter has been

20  briefed and is ripe for decision.

21        Background:

22        Lee and Amanda Anderson (Debtors) filed their Chapter 13 petition

23  on March 2, 2007. Their Chapter 13 plan is dated March 16, 2007. They

24  propose a $500/month payment to the chapter 13 trustee (trustee) in ¶ 1.

25  The home lenders are secured solely in Debtors' principal residence

26

MEMORANDUM OPINION-1

located in Klamath Falls, Oregon.[1]  Both lenders are treated in plan

¶ 2(b)(1) as to pre-petition arrears.  Debtors estimate the pre-petition

arrearage for each at $1,500,[2] which they propose the trustee pay at

$100/month[3] at 0% interest.  In plan ¶ 4, Debtors propose to pay the

regular monthly mortgage payments due post-petition directly to the home

lenders.  Plan ¶¶ 13-17 and "6"[sic][4] are the contested paragraphs, which

are discussed below.[5]

<u>Applicable Bankruptcy Code Sections, Local Rules and Orders:</u>

Before discussing the contested paragraphs, it is beneficial to

review the Bankruptcy Code sections, local procedural rules and orders

which are applicable to the matters at bar.

---

[1] Both home lenders' claims are evidenced by promissory notes and trust
deeds.

[2] Umpqua's amended proof of claim indicates a $1,609.35 pre-petition
arrearage; Citifinancial's proof of claim indicates a $1,482.72 pre-petition
arrearage.

[3] Plan ¶ 2(b)(4) proposes that the trustee pay $1,500 in remaining
attorney's fees before all other creditors.

[4] Plan ¶ "6" should have been numbered "18."

[5] The Bankruptcy Court for the District of Oregon requires that all
Chapter 13 plans be submitted on Local Form #1300.5.  Paragraphs ##1-11 thereof
are largely boilerplate.  Some paragraphs have blanks to be filled in with
particulars as to the debtor's payment obligations and creditor treatment.
Debtors may also add paragraphs to supplement the boilerplate.  The contested
paragraphs are such supplemental terms.

MEMORANDUM OPINION-2

**Bankruptcy Code Sections:**[6]

Section 524(i), a creature of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA),[7] gives a remedy to debtors against a creditor who willfully fails to credit plan payments to the debtors' material injury. The section treats such failure as a violation of the discharge injunction, and perhaps counter-intuitively, bases the remedy on the creditor's actions <u>prior</u> to the discharge.[8] Section 524(i) provides:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

Section 1322(b)(2) prohibits tampering with a lender's "rights," if the lender is secured solely in real property which is the debtor's principal residence.[9] It provides:

---

[6] Unless otherwise indicated, all statutory references are to Title 11 of the United States Code.

[7] Pub. L. 109-8, April 20, 2005, 119 Stat. 23. Most of BAPCPA's provisions, including § 524(i) were effective for cases filed on or after October 17, 2005.

[8] A debtor's remedy for violation of the discharge injunction is civil contempt. <u>Walls v. Wells Fargo Bank, N.A.</u>, 276 F.3d 502, 507 (9th Cir. 2002).

[9] In <u>Nobelman v. American Savings Bank</u>, 508 U.S. 324, 329-330, 113 S. Ct. 2106, 2110, 124 L. Ed.2d 228 (1993) the court held § 1322(b)(2)'s emphasis is on protecting the creditor's "rights," (as opposed to its "claim"), as reflected in the relevant mortgage instruments and nonbankruptcy law. The

(continued...)

MEMORANDUM OPINION-3

1

2

3

4

        Subject to subsections (a) and (c) of this section, the plan may—
        modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.[10]

5      Section 1322(b)(5) is an exception to § 1322(b)(2)'s anti-

6 modification language.  It allows for "cure" of defaults and maintenance

7 of regularly scheduled payments on long term debt.  It provides:

8

9

10

11

12

        Subject to subsections (a) and (c) of this section, the plan may—
        notwithstanding paragraph (2) of this subsection, provide for the curing of any default[11] within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

13      Section 1322(e) directs that the amount of a "cure" is determined

14 by the underlying agreement and nonbankruptcy law, as follows:

15

16

17

18

19

        Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

20

21

22

    [9](...continued)
court however noted these rights could be infringed by other sections of the Bankruptcy Code independent of § 1322(b)(2) (e.g. the automatic stay of § 362). Id.

23

24

    [10] The § 1322(c)(2) exception to anti-modification when the mortgage debt by its (non-accelerated) terms becomes due before the final plan payment is due, does not apply here.

25

26

    [11] "Any default" within the statute means that even post-confirmation defaults can be cured through the vehicle of a Chapter 13 plan.  In re McCollum, 76 B.R. 797, 800-801 (Bankr. D. Or. 1987).

MEMORANDUM OPINION-4

Section 1322(b)(11) is a "catch all" as to permissible plan provisions.  It provides:

> Subject to subsections (a) and (c) of this section, the plan may include any other appropriate provision not inconsistent with this title.

Section 1325(a)(1) is a confirmation requirement which provides:

> Except as provided in subsection (b), the court shall confirm a plan if- the plan complies with the provisions of this chapter and with the other applicable provisions of this title.

Local Rules and General Orders:

Most promissory notes and trust deeds (or mortgages) securing them, have provisions allowing for imposition of fees and costs relating to either the note's collection or the security's protection.  The Bankruptcy Court for the District of Oregon's General Order (G.O.) 97-1 (as amended by G.O. 98-1) addresses some of these fees and costs.  It gives secured creditors a choice to claim attorney's fees and costs in a proof of claim and have them paid by the Chapter 13 trustee as part of the cure of the debtor's default or simply give the debtor notice of these costs, without payment by the trustee.  A creditor may elect to include some fees and costs in its proof of claim and make simple disclosure as to others.  G.O. 97-1.4(b)(2).

If a secured creditor wants its pre-petition attorneys' fees and costs paid by the trustee, it must include and identify them in its initial proof of claim.  G.O. 97-1.4(b)(1)(A).  Post-petition, pre-confirmation fees and costs must be included and identified either in the initial proof of claim or in an amended proof of claim filed within 30 days of the confirmation order.  G.O. 97-1.4(b)(1)(B) as amended by G.O.

MEMORANDUM OPINION-5

98-1.6.  Post-confirmation fees and costs must be included in an amended proof of claim filed at least 90 days prior to the date the debtor is scheduled to make the final plan payment.  G.O. 97-1.4(b)(1)(c) as amended by G.O. 98-1.6.

If the creditor does not want the trustee to pay the fees and costs, it may file a proof of claim identifying the fees and costs (presumably with a notation not to pay them) or give the debtor written notice of the fees and costs.  G.O. 97-1.4(b)(2).  If notice is given, it shall state the right to such fees and costs, that payment by the trustee is not requested, the amount of the claim to the extent then known, and the interest rate charged on any accrued fees and costs.  G.O. 97-1.4(b)(2)(A).  For pre-petition fees and costs, the disclosure deadline is the proof of claim deadline.  G.O. 97-1.4(b)(2)(B).  For post-petition fees and costs, the deadline is the date at least 90 days before the debtor is scheduled to make the final plan payment.

Interested parties may request a written itemization of any fees and costs to the extent not provided in a proof of claim.  G.O. 97-1.4(b)(3).  The creditor must provide the itemization within 30 days of the request.  Id.

Whether notice is given or payment is requested via a proof of claim, a party in interest must file any objection to the fees and costs at least 60 days prior to the date the debtor is scheduled to make the final plan payment.  G.O. 97-1.4(b)(4).  The 60 day deadline does not preclude the court from *sua sponte* considering the reasonableness of the fees.  Id.

Finally, G.O. 97-1.4(b)(5) provides that a debtor who completes his plan payments and obtains a discharge shall be deemed to have cured any obligation owed to a secured creditor for fees and costs incurred no later than 120 days prior to the last scheduled plan payment, unless the secured creditor has disclosed the intent to preserve such a claim per the notice procedure discussed above.

Local Bankruptcy Rule (LBR) 3015-1.B.9 protects a creditor from automatic stay violations in servicing home mortgage maintenance payments under a Chapter 13 plan. Under LBR 3015-1.B.9, if a plan provides that the debtor will directly pay the regular home mortgage payments coming due post-petition, "the debtor will be deemed to have authorized the affected creditor to continue automatic withdrawals of payments postpetition, if authorized prepetition, and to mail to the debtor: (1) coupon books; (2) notices regarding payment changes; and (3) account statements."

<u>Discussion</u>:

In summary, the contested paragraphs direct how plan payments to the home lenders must be accounted for, define the ambit and procedures for allowance of "arrearage" claims, and establish certain remedies for failure to properly account for payments. Debtors argue the contested paragraphs are necessary to implement § 524(i). They argue § 524(i) is not self-executing, the plan must detail how the home lenders are to credit the payments received. They contend that to the extent this may conflict with preservation of the lenders' "rights," § 524(i) "trumps" § 1322(b)(2). The only court to consider this issue rejected these

MEMORANDUM OPINION-7

arguments, stating, after examining the statute's text and legislative history:

> This subsection does not provide a basis for the incorporation of proposed language in a Chapter 13 plan. Instead, it merely provides debtors a potential remedy, post-discharge, if a creditor has failed to honor the terms of a confirmed plan by not properly crediting payments received as required by the plan.

In re Collins, 2007 WL 2116416, *4 (Bankr. E.D. Tenn. 2007). This court agrees with the Collins court. Section 524(i) provides a remedy. It does not dictate what is permissible under a Chapter 13 plan. Rather, that task is governed by §§ 1322 and 1325. The contested paragraphs should be measured against those sections. The court does so below, setting the paragraphs out verbatim (in indented *italic* text), along with the court's analysis.

Contested Paragraphs:[12]

> *¶ 13.  **Application of Postpetition Ongoing Installment Payments Made by Debtors**.  The ongoing postpetition installment payments on the Debtors' home mortgaged [sic] will be paid by the Debtors directly to Citifinancial Mortgage and to Umpqua Bank, beginning with the payment due on April 1, 2007.*

This provision is surplusage. The boilerplate in plan ¶ 4 already provides that Debtors will directly pay the regular payments due postpetition in accordance with the terms of the respective contracts.

---

[12] The contested paragraphs are borrowed virtually verbatim from sample paragraphs suggested in the article *Challenging Mortgage Servicer 'Junk' Fees and Plan Payment Misapplication: Making Use of New Section 524(i)*, 25 NCLC Reports: Bankruptcy And Foreclosures Ed., Nov./Dec. 2006.

MEMORANDUM OPINION-8

The April 1, 2007 payment was the first payment due post-petition, and
does not have to be so specified.

> *The payments received by Citifinancial and/or
> Umpqua Bank from the Debtors for ongoing
> postpetition installment payments shall be
> applied and credited to the Debtors' mortgage
> accountd [sic] as if the account were current
> and no prepetition defaults existed on the
> petition date*

This provision is ambiguous. Debtors' intent is that the post-
petition maintenance payments be accounted for as if there was no pre-
petition default (the arrearage being paid separately through the
trustee). If it simply said that, the provision might pass muster. <u>See</u>,
<u>In re Wines</u>, 239 B.R. 703, 707 (Bankr. D. Id. 1999). However, it adds
language that the payments are to be applied and credited as "if the
accounts were current." If Debtors fall behind in their post-petition
maintenance payments, the plan appears to force the home lenders to
account for these late payments as current. This would modify their
rights in contravention of § 1322(b)(2).

> *in the order of priority specified in the
> note(s) and security agreement(s) and
> applicable nonbankruptcy law.*

This provision is surplusage. The boilerplate in plan ¶ 2(b)
provides that "the terms of the debtor's prepetition agreement with each
secured creditor shall continue to apply, except as otherwise provided in
this plan or in the confirmation order."

> *If these postpetition installment payments are
> made in a timely manner under the terms of the
> note, they shall be applied and credited
> without penalty.*

MEMORANDUM OPINION-9

1    Debtors defend this clause, arguing that payments to mortgagees
2  by Chapter 13 trustees are often put in "suspense" accounts, to be
3  credited later and assessed a "late fee."  However here, the trustee is
4  not making the maintenance payments.  Both notes allow for a late charge
5  if the "full" monthly payment is not made within 15 days of the due date
6  (the first of the month).  Umpqua's trust deed allows it to accept a
7  (partial) payment which does not bring the loan current, and not apply it
8  (i.e. hold it in a "suspense" account), until enough is later paid to
9  bring the loan current.  Thus it's possible, a partial payment in
10  "suspense" which later is credited, could be considered "late" and
11  assessed a late penalty as provided in the note.  To the extent the
12  provision attempts to modify this, it contravenes § 1322(b)(2).  To the
13  extent it simply restates that a full timely payment must be credited
14  without penalty, it is surplusage as the notes already provide for this
15  treatment.

16          *¶ 14.  Amount of Postpetition Ongoing*
          *Installment Payments Made by Debtors.*
17          *Citifinancial and/or Umpqua Bank shall comply*
          *with all applicable provisions of the Real*
18          *Estate Settlement Procedures Act (RESPA) and*
          *the Truth in Lending Act (TILA) during the*
19          *pendency of this plan,*

20          This provision is surplusage if it accurately states what is
21  required under the notes/trust deeds or nonbankruptcy law.  It is
22  "inappropriate" under § 1322(b)(11) if it misstates what is required.
23  Debtors cannot, by fiat, impose law which would otherwise not apply.

24          *and shall make, upon notice to the Debtors,*
          *Debtors' counsel and the Trustee, appropriate*
25          *adjustments to the ongoing installment payment*
          *amount(s) to reflect escrow account(s),*
26          *adjustable rate mortgage(s) and other changes*

> *required by the note(s) and security*
> *agreement(s).*

The home lenders' notes are fixed rate, so the verbiage regarding adjustable rate mortgages is surplusage.  The trust deeds require escrows for taxes and insurance, with Debtors paying 1/12 of the annual estimate each month.  The requirement is waived in Citifinancial's trust deed if Debtors make such payments to an institutional lienholder in senior position.  Umpqua's proof of claim contains an $80.25 charge for "Projected Escrow Reserves." Citifinancial's does not.  From this, and Citifinancial's junior position, the court infers no escrow is set up for the Citifinancial loan,[13] and thus verbiage relating to its escrow balances is surplusage.

Umpqua's trust deed requires notice to Debtors of changes in the escrow amounts required.  The plan provision imposes an additional duty to notify Debtors' counsel and the trustee.  Umpqua argues this additional notice "modifies" its rights in contravention of § 1322(b)(2).  However, additional notice is more in the nature of a procedural requirement to aid Chapter 13 administration, than a modification and is therefore permissible.  <u>See</u>, <u>In re Wilson</u>, 321 B.R. 222 (Bankr. N.D. Ill. 2005); <u>In re Andrews</u>, 2007 WL 2793401 (Bankr. D. Kan. 2007); <u>Collins</u>, <u>supra</u>.[14]

---

[13] There is no reasonable inference that a borrower would have two tax and insurance escrows set up with two separate lenders secured in the same property.

[14] This limited "extra" notice is permitted solely to facilitate administration of the Chapter 13 case.  It should not be interpreted as an invitation to require notice to all creditors or other parties in interest.

MEMORANDUM OPINION-11

Umpqua also argues requiring notice would violate the automatic stay. However, plan ¶ 2(b)(1)'s boilerplate incorporates all the terms of Umpqua's underlying note and trust deed, which in turn requires notice. Umpqua has not objected to this boilerplate. In any event, LBR 3015-1.B.9 provides for the Debtors' deemed authorization of such notices, and thereby insulates Umpqua from alleged stay violations.

> *If there is a shortage, deficiency or surplus of funds held in escrow, as defined under RESPA, during the pendency of this plan, Citifinancial and/or Umpqua Bank shall notify the Debtors as required by RESPA, and shall also provide notice to Debtors' counsel and the Trustee.*

The court's discussion immediately above also applies to this provision.

> *¶ 15. Application of Cure Payments Disbursed by Trustee. The Debtors will cure the default(s) on the mortgage(s) within a reasonable period of time by making payments on the arrears through the plan, which payments shall be disbursed by the Trustee to Citifinancial and/or Umpqua Bank.*

This provision is ambiguous. The term "cure . . . within a reasonable time by making payments" could be construed as a vague and indefinite period with indefinite payment amounts, which conflicts with plan ¶¶ 2(b)(1) and 2(b)(4), which allow for cure at $100/mo. after attorney's fees are paid. To the extent it doesn't conflict with these paragraphs, it is surplusage. Further, ¶ 2(b)(1) already provides that the trustee will pay the arrears, and as such the remaining language is surplusage.

> *The payments disbursed by the Trustee to Citifinancial and/or Umpqua Bank shall be applied and credited to the amount necessary*

MEMORANDUM OPINION-12

> *to cure the default(s), which shall be
> referred to as the "arrears" for the purposes
> of this plan.*

This provision is surplusage.  It is intended to protect Debtors from the home lenders' application of payments meant for the arrears, to other parts of the loan.  This rightly assumes the home lenders have an obligation to separately account for the arrears paid by the trustee through ¶ 2(b)(1).  See, <u>Nosek v. Ameriquest Mtg. Co. (In re Nosek)</u>, 363 B.R. 643, 645 (Bankr. D. Mass. 2007).  That the home lenders must apply the trustee's ¶ 2(b)(1) payments to the arrears is implied however, because plan ¶¶ 2(b)(1) and 4 make clear this is a "cure and maintain" plan and ¶ 2(b)(1) designates that the arrears and only the arrears are what the trustee is paying on the lenders' claims.  If the home lenders don't apply these payments to the arrears, they expose themselves to a § 524(i) claim for contempt.

> **¶ 16.  *Amount of Cure Payments Disbursed by Trustee.*** *The arrears shall consist of the following items, to the extent they are listed and separately itemized on the Citifinancial and/or Umpqua Bank's proof(s) of claim, are reasonable and have been actually incurred, and are authorized and have been properly assessed under the terms of the note and security agreement and applicable nonbankruptcy law:*
> *a)  any unpaid prepetition installment payments due;*
> *b)  any unpaid prepetition late fees;*
> *c)  any unpaid prepetition attorney fees;*
> *d)  any unpaid prepetition fees for services performed in connection with Debtor's prepetition default(s) or for the purpose of protecting Citifinancial and/or Umpqua Bank's interest in the note and security agreement;*

MEMORANDUM OPINION-13

<blockquote>

*(e)  any unpaid attorney fees and costs incurred postpetition but prior to confirmation;*

*(f)  any prepetition unpaid escrow shortage or deficiency, as defined under RESPA, to the extent not being recovered as part of the unpaid prepetition installment payments provided in (a) above; and*

*(g)  any postpetition interest on the arrears, if expressly provided for in the terms of the note and security agreement.*

*The amounts required to be paid by the Debtors for the above listed items of arrears in order to cure the default(s) shall be the amounts stated in the Citifinancial and/or Umpqua Bank's proof(s) of claim, unless the Debtors or Trustee dispute the amount, in which case the amount of arrears will be the amount ultimately decided by the Court or agreed to by the parties.*

</blockquote>

Debtors admit this paragraph "spells out what may be in a proof of claim." Debtors' Opening Memorandum, 18th page (unnumbered).  A plan is the wrong place to do this.  Further, Debtors cannot define the universe of what constitutes "arrears."  That definition is provided by § 1322(e), which incorporates the parties' agreements and nonbankruptcy law.[15]  <u>Atwood v. Chase Manhattan Mtg. Co. (In Re Atwood)</u>, 293 B.R. 227, 231 (9th Cir. B.A.P. (Nev.) 2003).  To the extent plan ¶ 16 diverges from § 1322(e) (and the underlying agreements and nonbankruptcy law), it is "inappropriate" under § 1322(b)(11).  To the extent it reiterates the parties' agreements and nonbankruptcy law, it is surplusage.  To the extent it requires that pre-petition, and post-petition, pre-confirmation

---

[15] Paying "arrears" is what "cures" a default.  <u>Cohen v. Lopez (In re Lopez</u>), 372 B.R. 40, 49 (9th Cir. B.A.P. (C.D. Cal.) 2007) ("cure . . . inextricably intertwined with the concept of arrears").

MEMORANDUM OPINION-14

arrears be set out in a proof of claim and paid by the trustee, at least as to attorney's fees and costs, it contravenes G.O. 97-1, which gives a secured creditor the choice of including such fees and costs in a proof of claim or simply disclosing them.[16] To the extent the provision requires arrearage components to be set out in a proof of claim subject to objection, if the home lenders seek payment from the trustee, it tracks ¶ 2(b)(1) which provides the trustee will only pay "allowed" claims, and is thus surplusage.[17] To the extent it seeks to define what interest rate can be charged on the arrearage, it is surplusage, as it restates § 1322(e). To the extent it requires that the post-confirmation interest rate be stated in the proof of claim, ("g" above), it is unnecessary, as the plan at ¶ 2(b)(1) contains a column for same. To the extent it limits the parties who may file claims objections to the Debtors and the trustee, it is inappropriate as any party in interest has standing to object to claims. § 502(a). To the extent the requirement that the arrears be "reasonable" tracks what is required under the agreements, nonbankruptcy law and/or the Bankruptcy Code, it is surplusage; to the extent an arrearage element need not be "reasonable" to be allowed, the provision misstates the law, and is thus "inappropriate."

---

[16] G.O. 97-1's disclosure procedure as to attorney's fees and costs (with opportunity to object) protects the "due process" Debtors argue they are entitled to.

[17] Plan ¶ 2(b)(1) requires that Debtors, if curing and reinstating, must state the estimated prepetition arrearage. It then provides: "THE ARREARAGES SHOWN IN A TIMELY FILED AND ALLOWED SECURED CLAIM SHALL CONTROL." This clause does not limit arrearages to pre-petition arrears; thus post-petition arrearages may also be paid through ¶ 2(b)(1). See, McCollum, supra.

MEMORANDUM OPINION-15

> ¶ 17.  *Additional Payments for Postpetition*
> *Arrears*.  The arrears shall also include any
> postpetition arrearage amounts consisting of
> the following items, but only to the extent
> these amounts are reasonable and have been
> actually incurred, are authorized by the note
> and security agreement and applicable
> nonbankruptcy law, and have been approved by
> court order or agreement between the
> Citifinancial and/or Umpqua Bank, the Debtors
> and the Trustee:
>> a)  any delinquent postpetition
>> installment payments due;
>> b)  any unpaid postpetition late fees;
>> c)  any unpaid reasonable postpetition
>> attorney fees, to the extent not being
>> recovered under paragraph 16(d) above;
>> d)  any unpaid postpetition escrow
>> shortage or deficiency, as defined
>> under RESPA, to the extent not being
>> recovered as part of the unpaid
>> postpetition installment payments
>> provided in (a) above; and
>> (e)  any interest on the postpetition
>> arrears, if expressly provided for in
>> the terms of the note and security
>> agreement.

As discussed above, Debtors cannot define the term "arrears."
Further, to the extent ¶ 17 reiterates the parties' agreement and
nonbankruptcy law, it is surplusage.  Paragraph 17 also expands ¶ 16's
definition of "arrears" to include "post-petition" arrears, and thus
requires that post-petition arrears be set out in a proof of claim and
paid by the trustee.  At least as to attorney's fees and costs, this
contravenes G.O. 97-1.  Also, ¶ 17, like ¶ 16, requires a
"reasonableness" finding as to all arrearage elements, and may be
problematic for the reasons stated above.  Further, ¶ 17 allows post-
petition arrears only after "court order or agreement between
Citifinancial and/or Umpqua Bank, the Debtors and the Trustee."  This
contradicts ¶ 2(b)(1) which provides for payment of "allowed" claims.  An

MEMORANDUM OPINION-16

"allowed" arrearage claim does not necessarily require that a court order be entered or an agreement reached.  If a creditor's original or amended proof of claim includes post-petition arrears and no party in interest objects, the claim is deemed allowed without court order or agreement. 11 U.S.C. § 502(a); see, also, In re Maxwell, 343 B.R. 278, 279 (Bankr. M.D. Fla. 2005) (holding a plan clause requiring a court order allowing post-petition fees, costs and interest violated § 1322(b)(2)).  Finally, requiring payment of all post-petition arrears (along with pre-petition arrears) through this plan will be problematic, as the plan is scheduled to run 60 months, and Debtors are already dedicating all their disposable income.  The plan does not have the flexibility to fund post-petition arrears without decreasing the approximate 11% dividend to general unsecured creditors currently proposed.  Paying post-petition arrears in any significant amount would most likely necessitate a modified plan.

> ¶ 6 [sic][18]  *Mortgage Current upon Plan Completion.*  *No other fees, costs or amounts incurred by Citifinancial and/or Umpqua Bank during this chapter 13 case and asserted to be due on the Debtors' mortgage account(s) may be collected or charged to the Debtors during the case or after entry of discharge except as permitted by this plan, and no payments received by Citifinancial and/or Umpqua Bank from the Debtors or the Trustee shall be applied and credited except as directed and required by this plan.*

Again, this provision locks the home lenders into a proof of claim, at least as to attorney's fees and costs, in contravention of G.O. 97-1.  Further, it bootstraps them into collecting only those fees and

---

[18] As noted above, ¶ "6" should have been numbered "18."

MEMORANDUM OPINION-17

costs "permitted by this plan." As the court interprets the contested

paragraphs, only fees and costs in an allowed proof of claim, which are

paid by the trustee are "permitted." If however, Debtors default under

the plan, and the home lenders are granted relief from the automatic

stay, this clause could conceivably prevent the lenders from collecting

their fees and costs upon non-judicial foreclosure and sale. Only in the

rare instance would a plan "permit" foreclosure.

> *Prior to completion of payments under this plan, Citifinancial and/or Umpqua Bank may seek a determination concerning the sufficiency of payments received under the plan. Unless the Court orders otherwise, pursuant to an appropriate motion or pleading, an order granting a discharge in this case shall be a determination that all prepetition and postpetition defaults with respect to the Debtors' mortgage(s) have been cured within the meaning of § 1325(b)(5)[sic],[19] and that the Debtors' mortgage account(s) is deemed current and reinstated on the original payment schedule under the note(s) and security agreement(s) as if no default(s) had ever occurred.*

Being deemed "current" at the end of the plan is the goal for

Chapter 13 debtors curing and reinstating home mortgages. The clause

giving the home lenders an opportunity to seek a court determination of

the sufficiency of payments received is unremarkable, and probably

unnecessary, as the court knows of no statute or rule prohibiting same.

The balance of the paragraph contravenes G.O. 97-1 as to attorney's fees

and costs, because it assumes all arrears will be paid through the plan.

Even if the requirement that all arrears be set out in a proof of claim

---

[19] Section "132<u>5</u>(b)(5)" does not exist. The reference was most likely intended to be "§ 132<u>2</u>(b)(5)."

MEMORANDUM OPINION-18

is stricken, the provision creates a default rule deeming cure upon discharge unless the creditor has filed a motion and obtained a court order otherwise. While courts have upheld procedural hoops to preserve collection of arrearages as not being "modifications" of secured creditors' rights, see e.g., Wilson, supra; Andrews, supra,[20] Jones v. Wells Fargo (In re Jones), 2007 WL 2480494 (Bankr. E.D. La. 2007), putting the onus on the creditor to obtain a court order contravenes G.O. 97-1 as to attorney's fees and costs. See also, Maxwell, supra.

> *Any willful failure of Citifinancial and/or*
> *Umpqua Bank to credit payments in the manner*
> *required by this plan or any act by*
> *Citifinancial/and/or Umpqua Bank following the*
> *entry of discharge to charge or collect any*
> *amounts incurred or assessed during the*
> *pendency of this chapter 13 case that were not*
> *authorized by this plan or approved by the*
> *Court after proper notice shall be a violation*
> *of 11 U.S.C. § 524(i) and the injunction under*
> *§ 524(a)(2).*

This provision is "inappropriate" under § 1322(b)(11). It purports to preserve Debtors' § 524(i) remedy, but does not accurately track its language, among other things, omitting the requirement that there be material prejudice caused by the failure to credit. Further, the provision suffers from the problem discussed above, where collection is limited to amounts authorized by the plan or by court order. The plan only authorizes arrearages through proofs of claims, which, as to attorney's fees and costs, violates G.O. 97-1. Further, G.O. 97-1 does not require a court order, only notice, to preserve an arrearage claim.

---

[20] In fact, as to attorney's fees and costs, G.O. 97-1 sets up one such procedural scheme, which has drawn no objection in the case at bar.

MEMORANDUM OPINION-19

1         <u>Conclusion</u>:

2         One intent behind the contested paragraphs is to make sure there

3 are no surprises after completion of the plan regarding the balances due

4 on Debtors' home mortgages.  This is a laudable end, but the means

5 employed unnecessarily confuse the process.  Aside from the clauses

6 requiring "extra" notice to Debtors' counsel and the trustee, for the

7 reasons stated above, the contested paragraphs cannot stand.

8 Confirmation of Debtors' plan dated March 16, 2007 will thus be denied.

9 Debtors will be given 30 days from entry of the order denying

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MEMORANDUM OPINION-20

confirmation to file an amended plan.[21]  An order consistent with the
above will be entered.

This opinion constitutes the court's findings of fact and
conclusions of law under FED.R.BANKR.PROC. 7052.  They shall not be
separately stated.

*albert E. Radcliffe*

ALBERT E. RADCLIFFE
Bankruptcy Judge


###

---

[21] The court would be remiss if it did not give some guidance as to what
might be "appropriate" plan provisions to ensure no surprises at plan's end.
G.O. 97-1 already provides a set of procedures.  However, its scope is limited.
A plan provision expanding that scope, such as: "The procedures set out in G.O.
97-1 (as amended by G.O. 98-1), shall apply to <u>all</u> arrearage amounts (pre and
post-petition), including <u>all</u> fees and costs, claimed by Umpqua and
Citifinancial," would likely be "appropriate."  However, the court thinks it
fair to alert the parties that this District's Local Bankruptcy Rules are
currently being revised, and it is probable that G.O. 97-1.4(b)(5)'s "deemed
cure" provisions will not survive the revisions.  If "deemed cure" language is
in fact stricken from the revised local rules, insertion of similar language
into a Chapter 13 plan, with the broadened scope outlined above, would also
seem appropriate.

The court further notes that the following language has been approved in
other Chapter 13 plans in this district.

Post-petition mortgage payments to secured creditor shall
be applied to the first post-petition payment due under
the terms of the contract.  Payments from the  trustee to
secured creditor shall be applied to its pre-petition
loan arrears claim.  As long as debtor timely pays all
post-petition payments, secured creditor shall not assess
any fees or other charges on the basis that a post-
petition payment is late.

Lender shall send such billing statements, coupons and
statements regarding post-petition advances and/or
charges on the loan directly to the debtor as it
customarily sends when no bankruptcy has been filed.

MEMORANDUM OPINION-21